UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DAVID WYNTER,                                   **MEMORANDUM & ORDER**
                                                                    09 CV 3023 (RJD)

                Petitioner,

-against-

STATE OF NEW YORK,

                Respondent.
-----------------------------------------------------------X

DEARIE, Chief Judge.

Pro se petitioner David Wynter seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, his application is denied, and the petition is dismissed.

## BACKGROUND

I.     Conviction and Sentence

Petitioner was tried and convicted for the May 30, 2004 robbery and assault of two high school seniors, Philip Biton and Robert Donaghy, at Biton's home in Queens. Petitioner was accused, along with Jason Wynter (petitioner's brother) and Lonnie Howell, of forcing Biton and Donaghy into Biton's garage, ordering them to undress, and taking their cell phones, watches, wallets and identification cards. Although petitioner and his accomplices wore bandanas on their faces, both Biton and Donaghy were able to see petitioner's face when he briefly removed his bandana. Petitioner was also accused of hitting Donaghy on the head with a sawed-off shotgun and placing the gun into Donaghy's mouth and ordering him to "stop looking at me." Another accomplice, Carlos Caisaguano, acted as the lookout and drove petitioner and co-defendants from the scene. At about the time of the robbery, one of Biton's neighbors noticed a SUV drive past his house. Two men were in the SUV and two men walked alongside the vehicle. The two men walking alongside the SUV eventually got in and the SUV took off. The neighbor testified

that all four men were black. Petitioner, his brother, Jason Wynter, and Lonnie Howell are black; Carlos Caisaguano is Hispanic.

Based on information retrieved from the victims' cell phones, the police identified Caisaguano as a possible suspect. During a consensual search of Caisaguano's residence the day after the robbery the police recovered a T-shirt and red beads that matched those worn by the assailants. Caisaguano also told police that he owned a Nissan Pathfinder. A search of the SUV revealed a knapsack containing a shotgun shell, a set of plastic surgical gloves and two red bandanas. Caisaguano was arrested and in a written statement identified petitioner and Jason Wynter as accomplices.

That same day, the police went to petitioner's residence. The police knocked on the door and petitioner approached the door from his upstairs apartment. When the officers identified themselves, petitioner ran back upstairs and turned off the lights in his apartment. The police continued to knock. Petitioner returned, opened the door and attempted unsuccessfully to run past the officers. With petitioner restrained, the police went up to his residence. Petitioner's mother, with whom petitioner and his brother, co-defendant David Wynter, lived, opened the door. The police told her that they were investigating a robbery involving her sons and the mother, a safety officer and auxiliary police officer, consented to a search of the residence. During the search, the police recovered a wallet containing identification cards, two cell phones, and two watches belonging to the victims. Petitioner and Jayson Wynter were arrested.

The next day, i.e., two days after the robbery, the police brought Biton and Donaghy to the precinct to conduct lineup identifications of petitioner, Jason Wynter, and Caisaguano. Petitioner refused to participate in the line-up and started struggling with several officers, at one point reaching for an officer's gun. One officer sustained a hand injury during the struggle.

After petitioner was finally restrained, Biton and Donaghy independently picked petitioner, Jason Wynter, and Caisaguano out of separate lineups. Lonnie Howell was picked out of a lineup weeks later.

Petitioner was convicted after a jury trial of two counts of Robbery in the First Degree (New York Penal Law § 160.15(4)), one count of Burglary in the First Degree (New York Penal Law § 140.30(4)), two counts of Robbery in the Second Degree (New York Penal Law § 160.10(1)), two counts of Assault in the Second Degree (New York Penal Law § 120.05(3)), one count of Attempted Escape in the First Degree (New York Penal Law §§ 110.00/205.12(2)), and one count of Criminal Possession of Stolen Property in the Fifth Degree (New York Penal Law § 165.40). He was sentenced as a second violent felony offender to 20 year terms for each first-degree robbery conviction, 20 years for the first-degree burglary conviction, 10 years for each of the second-degree robbery convictions, one year for the possession of stolen property conviction, and an indeterminate term of two to four years for the attempted first-degree escape conviction. These sentences were ordered to run concurrently with each other and consecutive to two five-year terms for the second-degree assault conviction. Petitioner was also sentenced to five years of post-release supervision.

II.   Pre-Trial Suppression Motions

Prior to trial, petitioner moved to suppress from introduction at trial (1) Donaghy's and Biton's property recovered from petitioner's apartment and (2) Donaghy's and Biton's lineup identifications, arguing that his mother did not voluntarily give her consent for the police to search petitioner's residence and therefore any evidence flowing from the illegal search should be suppressed. After a hearing at which petitioner's mother and the case detective testified, the trial judge credited the testimony of the case detective and concluded that the prosecution had

3

met its burden of establishing that petitioner's mother had voluntarily given her consent to search the residence. Accordingly, the trial judge denied petitioner's motion to suppress the recovered property and the lineup identifications. The trial judge also concluded that the lineup was not unduly suggestive and that the police's lineup procedures were "proper in all respects."

III. Direct Appeal

Petitioner appealed his conviction to the Appellate Division, Second Judicial Department ("Appellate Division"), arguing that the trial judge erred in denying his motion to suppress the introduction of the victims' property recovered from petitioner's residence and their lineup identifications because the prosecution had not met its burden of establishing that petitioner's mother had voluntarily consented to the search of petitioner's apartment. Petitioner also argued that the lineup procedure itself was improper because the police had used three of the same fillers from his lineup in Lonnie Howell's subsequent lineup. Finally, petitioner argued that a sentence of 25 years "for a robbery was excessive given that [petitioner] was only 22 years old at the time of the instant offense, that the value of the stolen property was minimal, and that neither the complainants nor the officers involved sustained anything more than very minor injuries" and the Appellate Division should invoke its equitable power to reduce the sentence in the "interests of justice."

The Appellate Division rejected all of petitioner's claims on the merits, finding that the record supported "the hearing court's determination to credit the testimony of the police witness, which established that the [petitioner's] mother voluntarily consented to the search of [petitioner's] home that he shared with her . . . and that the lineup identification procedure was not improperly conducted" and that the sentence imposed was not excessive. People v. Wynter,

4

48 A.D.3d 492 (2d Dept. 2008). The New York Court of Appeals denied leave to appeal. 10 N.Y.3d 873 (2008). This petition followed.

## DISCUSSION

I.  Legal Standard

Petitioner raises the same arguments in his petition as he did on direct appeal. "A habeas petition is not a vehicle to relitigate every issue previously determined in state court." Thomas v. West, 2007 WL 541476, at *11 (S.D.N.Y. Feb. 22, 2007) (citing Herrera v. Collins, 506 U.S. 390, 401 (1993)). "Rather, a state prisoner seeking habeas relief under Section 2254 must show that he is 'in custody in violation of the Constitution or laws or treaties of the United States.'" Id. (quoting 28 U.S.C. § 2254(a)). Petitioner "therefore bears the burden of proving, by a preponderance of the evidence, that his rights have been violated." Id. (citing Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997)). In addition, where the state court has denied a claim on the merits, a writ of habeas corpus will not be granted unless the state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Mercedes v. McGuire, 2010 WL 1936227, at *4 (E.D.N.Y. May 12, 2010) (citing 28 U.S.C. § 2254(d)). The Court must grant considerable deference to the prior determinations of the state court on both issues of law and fact. See Tavarez v. New York, 2008 WL 2775810, at *4 (S.D.N.Y. July 14, 2008) (citing Uttecht v. Brown, 555 U.S. 1, 9-10 (2007)).

II. Fourth Amendment Claim

Petitioner argues that the trial judge erred in denying his motion to suppress the introduction of Biton's and Donaghy's property recovered from petitioner's residence at trial as

5

well as their lineup identifications of petitioner because the prosecution failed to meet its burden of coming forward with evidence "showing the legality of the police conduct, much less [its] 'heavy burden' of proving that [petitioner's] mother voluntarily consented to the warrantless search of [petitioner's] apartment." Habeas review of this Fourth Amendment claim is barred by Stone v. Powell, 428 U.S. 465, 482 (1976). It is well established that all that Stone requires is that the petitioner have a full and fair opportunity to litigate his Fourth Amendment claims in the state court proceedings. See Ortiz v. Ecole, 2010 WL 1688444 (E.D.N.Y. Apr. 26, 2010) (citing Palacios v. Burge, 589 F.3d 556, 561 (2d Cir. 2009) (noting that Stone "bars us from considering Fourth Amendment challenges raised in a petitioner's petition for habeas relief"); Graham v. Costello, 299 F.3d 129, 134 (2d Cir. 2002) (explaining that Stone's "bar to federal habeas review of Fourth Amendment claims is permanent and incurable" unless the state fails to provide a "full and fair opportunity to litigate the claim")). Thus, before a federal court can review petitioner's Fourth Amendment claim, petitioner must establish that (1) New York did not provide him with a "corrective procedure" by which his claim could be litigated, or (2) New York had a corrective procedure in place but that he could not avail himself of it "because of an unconscionable breakdown in the underlying process." Id. (citing Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992)).

Petitioner cannot satisfy either prong. Petitioner litigated his Fourth Amendment claims as part of his state court proceedings and "federal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate." Id. (citing Capellan, 975 F.2d at 70 n.1). Nor was there an unconscionable breakdown in those proceedings as petitioner presented witness testimony and cross-examined the prosecution's witness, and the hearing judge wrote a thorough decision denying petitioner's suppression motion. See id.

6

Accordingly, petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court and he is barred from seeking further review of this claim in this habeas proceeding. See id.; Bey v. Payant, 2007 WL 1300779, at *6 (S.D.N.Y. May 1, 2007).

III.  Improper Lineup Procedure

The Appellate Division rejected, on the merits, petitioner's argument that the police's lineup procedure was improper because the police used fillers from his lineup identification at the subsequent lineup of co-defendant Lonnie Howell. Although petitioner did not raise this claim in terms of federal constitutional law in the Appellate Division, the Court exercises its authority under 28 U.S.C. § 2254(b)(2) in denying habeas relief on this claim. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). Petitioner did not suffer any prejudice, let alone the prejudice of the sort that rises to a constitutional due process violation, simply because fillers that were first used in his line-up were used in the subsequent line-up of a co-defendant. See Meatley v. Artuz, 886 F. Supp. 1009, 1016 (E.D.N.Y. 1995) ("Due process may be violated when, as judged under the totality of the circumstances, the identification procedure used is so impermissibly suggestive as to give rise to 'a very substantial likelihood of irreparable misidentification'") (quoting Neil v. Biggers, 409 U.S. 188, 198 (1972)). Accordingly, habeas relief on this claim is denied.

IV.  Excessive Sentence Claim

Petitioner also argues that a sentence of 25 years "for a robbery was excessive given that [petitioner] was only 22 years old at the time of the instant offense, that the value of the stolen property was minimal, and that neither the complainants nor the officers involved sustained

7

anything more than very minor injuries" and requests that his sentence be reduced in the "interest of justice." Habeas relief will not be granted on this claim.

As an initial matter, the parties agree that petitioner's excessive sentence claim is not exhausted for purposes of habeas review because petitioner did not raise the claim in terms of federal law in the Appellate Division but rather only invoked the Appellate Division's authority to reduce his sentence "in the interests of justice" pursuant to state law. Indeed, even on his habeas petition, petitioner fails to allege that his sentence violates federal law. Petitioner requests that the Court issue a stay in this proceeding so that he can return to state court and press a constitutional claim; respondent argues that because petitioner has already taken his direct appeal in the state court proceedings, he would be barred from raising the issue in a post-judgment motion, and therefore the Court can review his procedurally defaulted claim only if the petitioner can demonstrate either (i) cause for the default and actual prejudice if the claim is barred or (ii) that the court's failure to consider the claim will result in a fundamental miscarriage of justice. See Murray v. Courier, 477 U.S. 478, 485, 496 (1986).

The Court will not grant petitioner's request for a stay and will exercise its authority under 28 U.S.C. § 2254(b)(2) to deny habeas relief as it concludes that any claim by petitioner that his sentence violates federal law would be meritless. Petitioner acknowledged in the brief that he submitted on direct appeal to the Appellate Division that each of the sentences imposed was within the sentencing range prescribed by NewYork state law. See Petitioner's App. Div. Br. at 47 (attached as Exhibit B to Respondent's Declaration in Opp. to Pet. for a Writ of Habeas Corpus). Because it is well established that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law," Dorsey v. Irvin, 56 F.3d 425, 427 (2d Cir. 1995) (citing White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992)), habeas relief is

not warranted, see Cherry v. Fillon, 2006 WL 657062, at *8 (E.D.N.Y. Mar. 13, 2006) (rejecting excessive-sentence claim for same reasons).

CONCLUSION

For the foregoing reasons, petitioner's application is **denied** and his habeas petition is dismissed. Because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
      June _16_, 2010                                   s/ Judge Raymond J. Dearie

                                                                       RAYMOND J. DEARIE
                                                                       United States District Judge